Filed 5/28/26  P. v. Bauman CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>CLINTON ROBERT BAUMAN,<br><br>　　　Defendant and Appellant. | F088263<br><br>(Super. Ct. Nos. CRF69443, CRF69961)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Laura Leslie Krieg, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

While on parole for his prior convictions for first degree burglary and grand theft of a firearm, defendant Clinton Robert Bauman committed two first degree burglaries, one on February 26, 2021, and one on May 12, 2022. In Tuolumne County Superior Court, in addition to those charged crimes, two prior serious felony convictions were alleged as strikes. Defendant waived his right to a jury trial on the alleged strikes and admitted them. The trial court sentenced him under the "Three Strikes" law to an aggregate prison term of 50 years to life. (Pen. Code, §§ 667, subds. (b)–(j), 1170.12.)[1]

Defendant raises three issues on appeal relating to his sentencing. First, he asserts that his sentencing under the Three Strikes law was error because there was no determination by a jury that his prior strikes were committed on different occasions. Second, he argues his prior strikes were "part of a continuous action" and so the trial court erred when it denied his *Romero* motion.[2] We find no merit to these claims.

Finally, on count 1, a crime defendant committed with a coparticipant,[3] defendant argues the court erred when it failed to order joint and several liability for the victim's restitution. The People concede the matter should be remanded to the trial court to modify the restitution order to joint and several liability. We remand the matter to the trial court with directions to make that modification.

## PROCEDURAL BACKGROUND

On June 26, 2023, the Tuolumne County District Attorney filed an amended consolidated information charging defendant with first degree residential burglary (§ 459; counts 1 and 2) and second degree burglary (§ 459; counts 3 and 4). Count 1 alleged a first degree burglary on February 26, 2021. Count 2 alleged a first degree burglary on

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3] That coparticipant was Shane Greenway. He is not a party to this appeal. Defendant and Greenway were tried separately. (See, e.g., *Bruton v. United States* (1968) 391 U.S. 123.)

May 12, 2022.[4]  As to counts 1 and 2, the consolidated information alleged defendant suffered two prior serious felony convictions (§ 667, subd. (a)(1); counts 1 and 2) that also qualified as two prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12; counts 1–4).  It was further alleged as to counts 1 through 4, that defendant was convicted of two or more prior felony convictions (§ 1203, subd. (e)(4)) and alleged the following aggravating factors:  the manner in which the crime was carried out indicates planning, sophistication, or professionalism (Cal. Rules of Court,[5] rule 4.421(a)(8)), defendant engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)), defendant's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)), defendant served a prior prison term (rule 4.421(b)(3)), and defendant's prior performance on probation was unsatisfactory (rule 4.421(b)(5)).

On June 26, 2023, as to the alleged prior convictions, defendant waived his right to a jury trial and agreed to a bifurcated court trial.

On July 7, 2023, the jury found defendant guilty as charged on counts 1 and 2, but not guilty on counts 3 and 4.  The jury also found true that the manner in which the crime was carried out indicated planning, sophistication, or professionalism (rule 4.421(a)(8)).

On July 24, 2023, at the bifurcated court trial, defendant's certified rap sheet from the California Law Enforcement Telecommunications System (CLETS) report was admitted into evidence.  Defendant admitted his prior convictions.  Thereafter, the prosecutor orally amended the consolidated information to charge defendant with an enhancement pursuant to section 1203.085, subdivision (b), as to counts 1 and 2. Defendant admitted the enhancement (§ 1203.085, subd. (b)) as true, as well as his convictions of two or more prior felonies (§ 1203, subd. (e)(4)).

---

[4] Counts 3 and 4 were alleged to have occurred on May 5, 2022.

[5] All further rule references are to the California Rules of Court.

On September 7, 2023, the prosecutor filed an opposition to defendant's stated intent to file a *Romero* motion.

On January 12, 2024, defendant moved for a new trial. (§ 1181.)

On March 28, 2024, defendant filed a motion to strike one of his prior strikes, either the conviction for burglary (§ 459; Tuolumne County Superior Court case No. CRF48464 (case No. CRF48464)) or the conviction for grand theft of a firearm (§ 487, subd. (d); Tuolumne County Superior Court case No. CRF48461 (case No. CRF48461)).

On April 3, 2024, the prosecutor filed an opposition to defendant's motion for a new trial.

On April 26, 2024, the trial court denied the motion for a new trial and the *Romero* motion. The court sentenced defendant as follows: on count 1, 25 years to life; and on count 2, a consecutive term of 25 years to life.[6] The court also ordered defendant to pay restitution to the victim on count 1 in the amount of $138,000. (§ 1202.4, subd. (f).)

## FACTUAL BACKGROUND[7]

### I.      Count 1:  Burglary on February 26, 2021

#### 1.  Prosecution's Case-in-chief

T.B. owns a construction company. In or about August 2020, T.B. hired defendant to work for his company. Defendant told T.B. about his "past" after he was hired. Defendant had a history of burglary and thefts of safes. Nonetheless, T.B.

---

[6] The trial court struck the two prior serious felony conviction enhancements (§ 667, subd. (a)) under section 1385, subdivision (c).

[7] The facts include a synopsis of the events leading to defendant's convictions for counts 1 and 2. The facts relative to counts 3 and 4 have been omitted due to the jury's verdict finding defendant not guilty on those counts.

Pursuant to rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

4.

continued to employ defendant because he "looked very trustworthy."  After he started working for T.B., defendant helped T.B. remodel a bathroom in his home.

In or about February 2021, T.B. had a locked safe underneath the stairs in his home.  The safe contained about $85,000 in cash, as well as silver coins, a firearm, four or five watches, and personal documents.  He also had a five-gallon glass container full of coins upstairs in a separate area.

On February 26, 2021, at about 10:15 a.m., defendant knocked on T.B.'s door to borrow "trim."[8]  Defendant typically drove to T.B.'s home in his white pickup truck, however, on this particular day defendant did not have his truck.  It was unusual for defendant to come to T.B.'s house without his truck to borrow something.  T.B. answered defendant's knock, he was home recovering from a vaccination.  T.B. told defendant to retrieve the item and shut the door.  T.B. was "a little irritated."

About 15 minutes later, an older green truck drove up to the front of T.B.'s home.  Surveillance video showed two individuals exit the truck.  The individuals ran toward T.B.'s side door but left about two minutes later.  The driver was wearing a hood and a clown mask.  The passenger was wearing a black hooded sweatshirt, black pants, and black Nike shoes with a "white swoosh."  The passenger matched defendant's appearance in earlier footage showing him walking across the yard.

At about noon, T.B. left his home to attend a meeting about 25 minutes away.  He did not lock the front door.  Around the same time, defendant called T.B.'s foreman and asked if T.B. was home.

At about 1:45 p.m., T.B.'s security video showed the same green truck.  Two individuals exited the truck and went toward T.B.'s front door.  The driver wore the same clown mask.  Surveillance video further showed the two individuals loading T.B.'s safe and coin jar into the green truck.  When T.B. returned home in the evening, his safe and

---

[8] The testimony uses the words "trim" and "molding" interchangeably.

coin jar were missing. Later that day, defendant borrowed a Sawzall and a metal blade from T.B.'s foreman.

On March 3, 2021, law enforcement searched the residences of defendant and Alexander M., the registered owner of the green truck. At Alexander's residence, law enforcement located the green truck seen in T.B.'s surveillance video and paperwork for a storage unit at a storage facility. The green truck contained broken glass and loose change consistent with T.B.'s glass coin jar.

On March 4, 2021, Nicole C., defendant's former girlfriend, contacted the Tuolumne County Sheriff's Office. Nicole told Detective S. Betzenderfer that after the search warrant was executed, defendant was in a "hurry" to leave the house because he needed to go to the "storage units at [the storage facility]." Nicole also told Betzenderfer defendant gave her $2,000 cash that he got from Greenway from a previous loan that Greenway owed to defendant.

At trial, Nicole testified that after the search warrant on defendant's home was executed, defendant left and told her he needed to find Greenway. A few days prior to the execution of the search warrant, Nicole received $2,000 cash from defendant. He told Nicole to pay the mortgage with the money.

Law enforcement searched several storage units at the storage facility, including the unit corresponding to the paperwork found at Alexander's residence, but did not find anything of interest. However, outside a storage unit law enforcement found a piece of paper. T.B. recognized the handwriting on the paper as belonging to one of his tenants.

While law enforcement searched the unit, the manager of the storage facility noticed an adjacent unit had an illegally placed lock. The lock had not come from the business. A storage facility employee cut the lock, which is company protocol when a lock is found illegally placed. T.B.'s safe was inside the unit. The bottom of the safe was cut with a Sawzall. The unit contained paperwork, photo albums, a sleeping area, and clothing that belonged to Greenway. Also found inside the unit was a gray unopened

safe with $1,000 on top, another small black safe, a firearm, and watches that were in T.B.'s safe before it was stolen.

### 2. Defendant's Case-in-chief

Defendant testified on his own behalf. He suffered 17 prior felony convictions, including multiple theft-related convictions. He also was convicted of other previous first degree burglaries that involved safes.

Defendant met Greenway in prison. T.B. gave defendant a "chance" and hired him to work at his construction company. Defendant told T.B. he went to prison for burglaries. Defendant admitted he went to T.B.'s house to borrow a "trim" but denied he went there to provide a lookout for Greenway. Greenway gave defendant $2,000 two days after T.B.'s home was burglarized. Defendant never knew T.B. owned a safe. Defendant had been to the storage facility about a week before the burglary to attempt to open a gun safe once belonging to defendant's mother that Greenway had previously purchased from him.

Defendant used a Sawzall in the past to cut open the bottom of a safe. He asked to borrow a Sawzall and an unused metal blade from T.B.'s foreman so that he could use it at his house. When he saw Greenway had a safe at the storage unit, he had no idea it belonged to T.B. Later, defendant learned from T.B.'s foreman that defendant had been "laid off." (Boldface omitted.)

## II. <u>Count 2: Burglary on May 12, 2022</u>

### 1. Prosecution's Case-in-chief

E.N. owns property in Tuolumne County, consisting of a house, garage, and a shed. At about 6:00 a.m. on May 12, 2022, E.N. watched his surveillance camera as an individual looked into his home. E.N. was not in Tuolumne County at the time. E.N. contacted the Tuolumne County Sheriff's Office, and several units were dispatched to E.N.'s house.

While he was on the phone with the sheriff's office, the motion detector from the camera showed an individual inside his house. Sheriff's Deputy R. Kavanaugh was dispatched to E.N.'s house that morning. When Kavanaugh arrived, the individual "jumped off the porch" and ran away. Law enforcement was unable to apprehend the individual. Law enforcement searched E.N.'s house but did not find anyone inside. However, law enforcement noticed several items "out of place." (Boldface omitted.)

Lieutenant R. Nikiforuk looked at photographs from the surveillance video and was able to identify defendant "[v]ery quickly" because he had seen defendant throughout the past 20 years. Kavanaugh also attempted to identify the suspect inside E.N.'s home based on a still picture from the surveillance video. He compared defendant's neck tattoo to the one captured in E.N.'s surveillance video and determined the tattoos matched.

On May 14, 2022, law enforcement conducted a parole search of defendant's home. Inside defendant's bedroom, law enforcement found archery equipment that matched the items that had been taken from E.N.'s property earlier that month.

Later, when Kavanaugh went to the courthouse to arrest defendant, he was approached by defendant's girlfriend, Stephanie M. She asked Kavanaugh the status of defendant's case. Kavanaugh recognized Stephanie as the driver of a Buick he saw driving on a road near E.N.'s house immediately after the burglary. Stephanie admitted she was near E.N.'s house on the day of the burglary. Stephanie told him she picked defendant up in the area to take him to work. When asked again why she was near E.N.'s house when she did not live in the area, Stephanie got nervous and turned "white." When Kavanaugh explained to Stephanie that he believed defendant committed the burglary, she stopped talking to him and left.

### 2. Defendant's Case-in-chief

On May 12, 2022, Sheriff's Deputy C. Stephens responded to E.N.'s residence and observed a male individual, however, he only got a glimpse of the individual and could not independently identify the person. Stephens found a vehicle registered to Nicholas B. parked near E.N.'s house. When shown a photograph of Nicholas, Stephens believed he was the perpetrator of the burglary. Thereafter, Stephens watched E.N.'s surveillance video and saw that the perpetrator was taller than Nicholas and had a neck tattoo. Defendant's neck tattoo matched the neck tattoo of the perpetrator shown in the video.

In January 2022, Nicole had spinal surgery. During her recovery, defendant helped her and occasionally spent the night even though they were not living together. In May 2022, defendant helped Nicole every Thursday.[9]

Defendant testified on his own behalf. On May 12, 2022, he woke up at Nicole's house at about 8:00 a.m. He had been Nicole's caregiver on Thursdays and occasionally other days as well. He was with Nicole at the time of the burglary at E.N.'s house. Defendant denied he was the person on E.N.'s surveillance video.

## DISCUSSION

### I. Defendant was not entitled to a jury determination on whether he suffered two prior serious felony convictions on the same occasion.

Defendant was alleged to have previously been convicted of grand theft of a firearm (§ 487, subd. (d)(2); case No. CRF48461) and first degree burglary (§ 459; case No. CRF48464) on July 19, 2016. Each conviction was alleged to constitute a prior strike (§§ 667, subds. (b)–(j), 1170.12), and a prior serious felony conviction (§ 667, subd. (a)(1)).

---

[9] Upon agreement by the parties, the trial court took judicial notice of the fact that May 12, 2022, was a Thursday.

The trial court informed defendant of his right to a jury trial on the prior conviction allegations. Defendant requested the court bifurcate the allegations and he waived his right to a jury trial.

After the jury returned verdicts on counts 1 through 4, defendant admitted the prior serious felony conviction allegations. Specifically, he admitted he was convicted in case No. CRF48461 of grand theft of a firearm (§§ 487, subd. (d)(2), 667, subd. (a)(1)) on July 19, 2016. He also admitted he was convicted in case No. CRF48464 of first degree burglary (§§ 459, 667, subd. (a)(1)) on July 19, 2016. The certified CLETS report showed defendant was convicted of those two prior strikes.

The trial court sentenced defendant for his convictions on counts 1 and 2 pursuant to the Three Strikes law enumerated in section 667, subdivisions (b) through (j).

Defendant claims the court erred in sentencing him under the Three Strikes law because there was not a jury determination that the strikes were committed on different occasions. He asserts they were committed on the same day. He contends the court "violated [his] constitutional right to a jury trial by adjudicating underlying facts related to [his] prior convictions." He cites, as support for his position, *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*) and section 654.

The People respond defendant was not entitled to a jury determination on whether his prior strikes were committed on the same occasion. The People maintain the trial court was statutorily required to sentence him to two consecutive terms of 25 years to life under the Three Strikes law. (§§ 667, subd. (c)(6), (7), 1170.12, subd. (a)(6), (7); see, e.g., *People v. Deloza* (1998) 18 Cal.4th 585, 590–591.)

There is no federal or state constitutional right to a jury trial on the fact of a prior conviction. This is referred to as the *Almendarez-Torres* exception to the *Apprendi* rule in the federal context. (See *Almendarez-Torres v. United States* (1998) 523 U.S. 224; *Apprendi v. New Jersey* (2000) 530 U.S. 466.) "[T]he *Almendarez-Torres* holding [is] a

10.

narrow exception to the Sixth Amendment's jury trial right for sentencing-enhancing facts. '*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Wiley*, *supra*, 17 Cal.5th at pp. 1079–1080.)

In California, defendants "have a statutory right to a jury trial on 'the question of whether or not the defendant has suffered the prior conviction.' " (*People v. Gallardo* (2017) 4 Cal.5th 120, 125, quoting § 1025, subds. (b), (c) & citing § 1158.) "Our state Constitution requires that waiver of jury trial in a criminal case be made 'by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' " (*People v. French* (2008) 43 Cal.4th 36, 46; quoting Cal. Const., art. I, § 16.) The requirement of an express waiver, however, only applies to the constitutional right to a jury trial, not to jury trial rights established by statute. (*French*, at p. 46.)

Defendant and his attorney both expressly waived the right to a jury trial regarding his prior conviction allegations. Defendant admitted he was convicted of two prior strikes. There was no impermissible judicial "adjudicati[on] [of] underlying facts" that increased defendant's sentence beyond that authorized by the jury's verdict.

A jury convicted defendant of two first degree burglaries in the current case. The trial court was required to sentence him under the Three Strikes law.

Under the Three Strikes law, if a defendant has two or more prior serious or violent felony convictions, punishment for any current serious or violent felony conviction "*shall* be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greatest of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction . . . . [¶] (ii) Imprisonment in the state prison for 25 years . . . [or] [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any [applicable] enhancement . . . ." (§ 667, subd. (e)(2)(A)(i)–(iii), italics added.) When the relevant criteria are met, application of section 667, subdivision (e)(2)(A) is mandatory,

11.

and its requirement that the trial court select the greatest of the three calculations is not discretionary. (§ 667, subds. (e)(2)(A), (f)(1); see *People v. Carmony* (2004) 33 Cal.4th 367, 377 [Three Strikes law does not offer a discretionary sentencing choice; it establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike]; § 667, subd. (f)(1) [Three Strikes law "shall be applied in every case in which a defendant has one or more prior serious or violent felony convictions as defined in subdivision (d)"].)

The issue regarding separate occasions relative to the Three Strikes law arises with respect to defendant's *current* convictions, not his prior strikes. (See § 667, subd. (c)(6) ["[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court *shall* sentence the defendant consecutively on each count . . . ."].) Here, the jury found defendant guilty of two current first degree burglary offenses against different victims, at different times. This was sufficient to support consecutive sentencing on defendant's current convictions. (See, e.g., *People v. Lawrence* (2000) 24 Cal.4th 219, 233; *People v. Hendrix* (1997) 16 Cal.4th 508, 512; cf. *People v. Catarino* (2023) 14 Cal.5th 748, 750 [the judicial factfinding necessary by the trial court to impose consecutive rather than concurrent sentences does not violate the 6th Amend. because it is " 'a sentencing function in which the jury traditionally played no part' "].)

### 1. *Erlinger* and *Wiley* do not apply.

Defendant argues that his position is supported by *Erlinger*, *supra*, 602 U.S. 821 and *Wiley*, *supra*, 17 Cal.5th 1069. Neither case applies here.

In *Erlinger*, the defendant was convicted of being a felon in possession of a firearm, a crime carrying a sentence of up to 10 years in prison. (*Erlinger*, *supra*, 602 U.S. at p. 825.) He was charged under the Armed Career Criminal Act (ACCA), which provided for an increased sentence if the defendant had three prior qualifying convictions that were " 'committed on occasions different from one another.' " (*Id*. at pp. 825, 834.)

At the sentencing hearing, the lower court determined the defendant had suffered the qualifying convictions on different occasions and imposed an increased sentence of 15 years in prison. (*Id*. at p. 826.)

Under the rationale of *Apprendi*, the United States Supreme Court held that a jury, not the trial court, was required to make the requisite finding of different occasions under the ACCA. (*Erlinger*, *supra*, 602 U.S. at p. 834.) This was because the effect of the ACCA was to increase the defendant's minimum and maximum potential sentence for his single crime. (*Erlinger*, at p. 835.) The court's finding of different occasions increased the defendant's sentence from carrying a maximum of 10 years, to a sentence carrying a minimum of 15 years, and potentially up to life in prison. (*Ibid*.)

Here, application of the Three Strikes law based on defendant's prior convictions did not increase his sentence for a single crime beyond that authorized by the jury's verdict. Unlike the ACCA, underlying facts regarding the occasion of the prior strikes are not required to be adjudicated under the Three Strikes law, and the trial court made no such determination.

In *Wiley*, *supra*, 17 Cal.5th 1069, the California Supreme Court held a defendant is "entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Id*. at p. 1086, fn. omitted.) The *Wiley* court clarified the proper procedure for adjudicating aggravating factors. The defendant may assert the right to a jury trial, may waive the right to a jury trial in favor of a court trial, or may waive trial altogether. (*Ibid*.) The burden is on the People to prove the facts relied on to justify an upper term sentence are proven beyond a reasonable doubt. (*Ibid*.) Relying on *Erlinger*, *Wiley* explained that amended section 1170 allows for imposition of the upper term only when additional factfinding has been done regarding aggravating factors, thus increasing a defendant's exposure to punishment for a specific offense.

13.

(*Wiley*, at pp. 1086–1087.)  Using the *Chapman*[10] standard of review for federal constitutional error, *Wiley* held there was a possibility a rational juror would not have found an aggravating factor true, specifically, the defendant's crimes were of increasing seriousness.  (*Wiley*, at pp. 1087–1089.)

Here, defendant was afforded the right to a jury trial on the aggravating circumstances in compliance with *Wiley*.  (*Wiley*, *supra*, 17 Cal.5th at pp. 1086–1087.) *Wiley*'s reliance on *Erlinger* to interpret section 1170, when a defendant has been deprived of the right to a jury trial and also subjected to an increased sentence for a specific offense, does not apply to the determination of whether prior strike convictions were committed on the same occasion.  *Wiley* did not address the validity of judicial factfinding under the Three Strikes law, which focuses on a defendant's status as a repeat offender.  (See *People v. Murphy* (2001) 25 Cal.4th 136, 156.)

While defendant does not raise the point directly, we also note it is immaterial defendant's two prior strikes arose out of a consolidated case because two strikes can arise from a single case; the prior strikes do not have to be brought and tried separately. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 939; *People v. Superior Court (Arevalos)* (1996) 41 Cal.App.4th 908, 916.)  "Nothing within the Three Strikes law 'suggests that when a defendant has sustained a prior conviction for an offense designated as a violent or serious felony, the prior conviction may be counted as a strike for purposes of sentencing under the Three Strikes law only if the prior conviction was for an offense that was "brought and tried separately" from another offense that also qualified as a violent or serious felony.' "  (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 387.)

---

[10] *Chapman v. California* (1967) 386 U.S. 18.

Moreover, the record shows the two prior strikes were committed within the same 24-hour period, and that the strikes were from different acts, at different places, and against different victims. (Cf. *People v. Vargas* (2014) 59 Cal.4th 635, 645–646 [two prior convictions arising out of a single act against a single victim may not be treated as two strikes for purposes of Three Strikes sentencing]; see *People v. Shaw* (2025) 18 Cal.5th 1089, 1093 [a single act that harms two victims may not be treated as two strikes for purpose of Three Strikes sentencing].) Sentencing under the Three Strikes law was appropriate.

### 2. Section 654 does not apply.

Section 654, subdivision (a) states: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Defendant asserts section 654 requires a jury to determine whether the two prior strikes were committed as a part of a continuous course of conduct. In his reply, he does not address section 654. Defendant's claims are insufficiently developed and could be rejected for that reason alone. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Hardy* (1992) 2 Cal.4th 86, 150; rule 8.204(a)(1)(B) [arguments in appellate briefs must be supported by argument and, if possible, by citation of authority].) In any event, section 654 does not apply to sentencing under the Three Strikes law.

It is the fact of a defendant's recidivism that is punished under the Three Strikes law, not an "act or omission" within the meaning of section 654. (See *People v. Benson* (1998) 18 Cal.4th 24, 34 [the focus of the Three Strikes law is "*the status* of the defendant as a repeat felon" as opposed to section 654, "which is concerned with the appropriate punishment for '[a]n act or omission that is punishable in different ways' "].) Defendant qualifies for the punishment provisions under section 667, subdivision (e)(2)

because he has a history of recidivism. No single act or omission is being punished more than once.

Defendant was sentenced under the Three Strikes law. He was not entitled to a jury determination of whether his prior strikes were committed on the same occasion.

## II.  The court did not abuse its discretion when it denied defendant's *Romero* motion to strike one of his prior strike convictions.

Defense counsel brought a motion under *Romero* and Senate Bill No. 1393 (2017–2018 Reg. Sess.). He argued that, because the prior strike convictions occurred within the same 24 hours, involved overlapping facts, arose out of a "single period of aberrant behavior," and were "so intertwined with each other," it would be in the interest of justice to strike one of them.

The prosecutor opposed the request, arguing defendant was not outside the spirit of the Three Strikes law. The prosecutor set forth the facts of the two prior strikes and noted they involved different conduct and different victims.

At the sentencing hearing, defense counsel reiterated his argument. The prosecutor outlined defendant's criminal history beginning in 2002, that increased in frequency. The prosecutor also discussed the "egregious" facts of the current offenses and the serious nature of the two prior strikes, arguing defendant was a "huge risk to public safety." The trial court indicated it read defendant's motion and attachments, the People's opposition, and reviewed case law regarding the factors to analyze and how to exercise its discretion. The court found defendant did not fall outside the spirit of the Three Strikes law. Its reasoning, in full, is as follows:

> "[Defendant's] . . . prior strikes are for first-degree residential burglaries . . . in this case he was convicted . . . of two separate first-degree burglaries, the first one occurring [i]n February . . . 2021 . . . and the second . . . [i]n May . . . 2022.

"[Defendant] had a first-degree burglary prior strike conviction. The [c]ourt also notes he was on parole . . . for first-degree burglary and grand theft of a firearm at the time he committed two more first-degree burglaries.

". . . [Defendant's] criminal history does go back to 2002 with a theft conviction. In 2006 he was convicted of a petty theft with a prior. He violated probation three different occasions during that sentence.

"In 2007 he was convicted of a DUI. He violated his terms and conditions of probation.

"In 2014 he was convicted of second-degree burglary and a petty theft.

"In 2016 he [was convicted of] . . . first-degree burglary . . . [and] conspiracy to commit burglaries and possession of stolen property.

". . . [I]n [case No. CRF]48464 he picked up another first-degree burglary.

"In [case No. CRF]48461, another first-degree burglary.

"In 2016, tampering with . . . evidence and . . . conspiracy . . . .

"And what this pattern shows is that despite the programming . . . [defendant] did while in prison. But what really stood out to the [c]ourt – and the [c]ourt considered the death of his mother while he was incarcerated. But what stands out to the [c]ourt is that he was given a 13-year, 4-month sentence . . . in July . . . 2016. He served far less than half of it. He was paroled . . . [i]n June . . . 2020. And less than a year from being paroled . . . for first-degree burglary he commits another first-degree burglary.

"And then after committing that first-degree burglary, while that's . . . still under investigation, in May . . . 2022 . . . he commits a completely separate and unrelated first-degree burglary.

"That shows me that this programming that he engaged in did little to impact his behavior once released into the public. The [c]ourt believes . . . first-degree burglaries are serious crimes. And the [L]egislature agrees. That's why they are considered . . . serious felonies and strike offenses.

". . . [B]oth burglaries . . . [were] carried out [with] . . . planning, sophistication, [and] professionalism. . . .

17.

"The burglary . . . [in this case] . . . [defendant] did take advantage of a position of trust.  [T.B.] knew [defendant] had been released from prison, gave him a chance to turn his life around, employed him into his construction business. . . .  [Defendant] took advantage of knowing, because he had done some work for [T.B.], that [T.B.] had a safe in his home.

"[Defendant] . . . was the mastermind behind this burglary.  He told the . . . coconspirators where the safe was.  He knew where it was because [T.B.] . . . trusted him.  And they broke into [T.B.'s] home, who lost approximately $138,000 of items from this burglary.  He had [$]90,000 in cash in the safe, as well as three watches . . . [a]nd . . . a five-gallon . . . jug that had about $20,000 of mixed gold and silver coins.  [¶] . . . [¶]

". . . [J]ust about a year . . . later . . . [defendant] and coconspirators . . . took advantage of [E.N.] . . . the [c]ourt very clearly saw on the camera that [defendant] entered [the] home.  It was all captured on video . . . the [c]ourt found that video quite frightening because [defendant is] going through that home, not knowing whether somebody is in it or not in it, and again commits another first-degree burglary, completely unrelated to [T.B.'s] case.

". . . [W]hen the [c]ourt looks at the factors under [*People v. Williams* (1998) 17 Cal.4th 148], the [c]ourt can't help but notice that while . . . his priors are for first-degree burglaries, he, despite having gone to prison for those same offenses, continues to commit first-degree burglaries and . . . victimize people in their homes.

". . . [T]he [c]ourt doesn't find . . . the prior [strike] is mitigating just because there was 24 hours between the grand theft of a fire[arm] . . . at one first-degree burglary and another first-degree burglary. . . .  [D]efendant just goes from home to home to home to home and doesn't care and continues to commit first-degree burglaries.

". . . [B]y virtue of his prior offenses . . . [defendant] has shown that he's fully willing and able to commit first-degree burglaries and victimize people in their homes just as he[] . . . continued to do in these current cases.

"The [c]ourt also looked at the age of the prior . . . from 2016 to 2020 he was incarcerated and then, less than a year after being released from prison, commits another first-degree burglary.

"In looking at the prior cases, the [c]ourt will also note that, as in the current first-degree burglaries, where the jury found criminal sophistication

18.

present, the prior convictions for his first-degree burglaries and thefts of a firearm also included coconspirators . . . safes . . . [and] a finding . . . of sophistication[,] . . . planning[,] and professionalism. . . . [T]hose are all . . . factors the [c]ourt has considered that weigh against granting a *Romero*.

"[The court] reviewed his criminal history . . . and find . . . a pattern of theft and victimization from 2002 to present. . . . [Defendant] has shown his inability to comply with the terms and conditions of probation, as he has violated his probation terms on multiple occasions.

"Regarding his character, the [c]ourt does have some letters that seem to support the fact that when [defendant] is sober he is hard-working. I don't doubt that he can be a hard worker. However, I can't help but note that he took advantage of his employer after being given this miraculous chance after being released from prison and then victimized his employer. . . .

"As far as [defendant's] prospects . . . he can have times where he can work . . . despite all the programming and the chances he was given, he continued very quickly after being released and being on parole to continue . . . to commit two more first-degree residential burglaries, knowing he was on parole and knowing he had two strikes.

". . . [T]he [c]ourt, in balancing the *Williams* factors . . . finds that [defendant] does not fall outside the spirit of the [Three Strikes] law and does not warrant the [c]ourt finding some extraordinary circumstance where the end of justice would demand the [c]ourt to grant the *Romero*. In fact, [the court] think[s] all of the elements support the [c]ourt denying the *Romero*." (Italics added.)

On appeal, defendant argues the trial court abused its discretion. Defendant cites *People v. Garcia* (1999) 20 Cal.4th 490 as an example of the Supreme Court's approval of judicial discretion under section 1385 in striking a prior strike conviction with respect to one conviction but not another. (*Garcia*, at pp. 492–493.) He argues we should follow *Garcia*, because his prior strikes were committed on the same day, suggesting they occurred during a "single period of aberrant behavior," and thus one of the strikes should have been stricken. (*Id*. at p. 503.)

The People respond that the court acknowledged defendant's prior strikes occurred within a 24-hour period but acted within its discretion when it declined to strike one of them. We agree with the People.

We review the trial court's denial of defendant's motion to strike his prior felony convictions for an abuse of discretion. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) For example, an abuse of discretion occurs where the trial court was not " ' "aware of its discretion" to dismiss . . . or where the court considered impermissible factors in declining to dismiss.' " (*Ibid.*) " ' "[I]t is not enough to show that reasonable people might disagree about whether to strike one or more" prior conviction allegations.' " (*Ibid.*; see *People v. Carmony*, *supra*, 33 Cal.4th at pp. 377–378.)

In *Romero*, our Supreme Court concluded "section 1385[, subdivision ](a) . . . permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero*, *supra*, 13 Cal.4th at pp. 529–530; see *People v. Strong* (2001) 87 Cal.App.4th 328, 335.) The state high court emphasized, however, that "[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385[, subdivision ](a), and is subject to review for abuse." (*Romero*, at p. 530.) " ' "[T]he language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal." ' " (*Ibid.*) " ' " '[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' " ' " (*Id.* at p. 531.)

In *Williams*, our Supreme Court gave further definition to the standard for dismissing a strike—"in furtherance of justice"—by requiring that the defendant be deemed "outside the spirit" of the Three Strikes law before a strike was dismissed: "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and

prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Following *Williams*, the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike for defendants with a long and continuous criminal career. (E.g., *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [no abuse of discretion in refusing to vacate one of the defendant's strikes because the defendant "is an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed"]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 49 [reversing order dismissing two of three strikes, where the defendant had a long history of felonies, misdemeanors, drug use, and parole violations, which showed that his background, character, and prospects were "dismal, and cannot be said to be outside the spirit of the [T]hree [S]trikes law"]; see *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475 [reversing dismissal of strike where the defendant's criminal history extended back to when he was 15 years of age, including previous felonies, various misdemeanors, and parole and probation violations].)

Here, the trial court discussed defendant's lengthy criminal record, which included multiple convictions since 2002 showing a continuous pattern of criminal behavior. The court noted defendant had been offered multiple chances, programming, and probation. However, despite the programming, the court found significant that defendant committed two unrelated first degree burglaries in less than a year after being paroled from a prior first degree burglary conviction. Considering defendant's criminal history alone, the court was within its discretion not to strike defendant's prior strike conviction. (*People v. Stone*, *supra*, 75 Cal.App.4th at p. 717.)

The trial court also discussed the circumstances of defendant's multiple first degree burglary convictions. The court found the circumstances of the convictions involved planning, sophistication, and professionalism; defendant victimized people in

21.

their homes. Regarding the current offenses, the court concluded defendant took advantage of a position of trust and he was the mastermind behind the crimes. The court also discussed defendant's background, the impact of his mother's death, and his ability to work. Given these considerations, the court declined to find "some extraordinary circumstance where the end of justice would demand" granting the motion to strike.

To the extent defendant's 2016 strike might qualify as remote under some circumstances, this case does not present that situation. "In determining whether a prior conviction is remote, the trial court must evaluate whether the defendant has had a 'crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways.' [Citation.] If the 'defendant has led a continuous life of crime after the prior, there has been no "washing out" and there is simply nothing mitigating about [an old] prior.' " (*People v. Nunez* (2023) 97 Cal.App.5th 362, 372, quoting *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) The trial court examined defendant's conduct after the prior strikes occurred. However, the court found defendant continually failed to comply with the terms of probation and very quickly after being released committed other crimes.

While the *Garcia* court found prior strike convictions may be stricken on a current conviction-by-conviction basis, our high court explained the ultimate determination in sentencing under the Three Strikes scheme is whether a defendant—considering his present felonies, his prior strike convictions, and his background, character and prospects—" 'may be deemed outside the scheme's spirit, in whole or in part.' " (*People v. Garcia*, *supra*, 20 Cal.4th at p. 499.)

The trial court recognized the prior strikes were committed in a 24-hour period. The court, however, did not find this factor mitigating because it showed defendant "goes from home to home" continuing to commit first degree burglaries.

Unlike *Garcia*, defendant's prior strike convictions were not the result of uncharacteristic behavior arising during a single instance of criminality resulting in one

prior prison term.  (See, e.g., *People v. Garcia*, *supra*, 20 Cal.4th at p. 503.)  Defendant has accumulated numerous felony convictions; he has a lengthy criminal record.  He violated the terms of probation on several occasions.  He committed the two instant first degree burglaries while he was on parole for the prior strikes, which also involved first degree burglary and theft.  And, distinct from the defendant in *Garcia* who cooperated with police, defendant committed a separate, unrelated first degree burglary during law enforcement's investigation of the first offense in this case.  *Garcia* is distinguishable and defendant's arguments to the contrary are unavailing.

The trial court considered the relevant criteria; it did not abuse its discretion when it denied defendant's *Romero* motion.

### III.    The court must order defendant and his coparticipant jointly and severally liable for the victim restitution ordered on count 1.

The parties agree that the victim restitution order on count 1 in the amount of $138,000 should reflect joint and several liability between defendant and Greenway.

On January 4, 2024, at Greenway's sentencing hearing, the trial court ordered Greenway and defendant jointly and severally liable for victim restitution to T.B. in the amount of $138,000.  (§ 1202.4, subd. (f).)  (*People v. Greenway* (Apr. 3, 2025, F087768) [nonpub. opn.].)[11]  On appeal, this court directed the trial court to amend the

---

[11] A "reviewing court" (Evid. Code, § 459, subd. (a)) "shall" take judicial notice of some matters as set forth under Evidence Code sections 451 and 453, and "may" take judicial notice of other matters as described in Evidence Code section 452.  The matter to be judicially noticed in either circumstance must be relevant to a material issue in the case.  (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; see *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [" 'Because . . . no evidence is admissible except relevant evidence, it is reasonable to hold that judicial notice, which is a substitute for formal proof of a matter by evidence, cannot be taken of any matter that is irrelevant' "].)  We to take judicial notice of this court's nonpublished opinion in *People v. Greenway*, *supra*, F087768.  (See Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); see also *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1; rule 8.1115(b) ["An unpublished opinion may be cited or relied on:  [¶] . . . [¶]  (2) When the opinion is relevant to a criminal . . . action because it states reasons for a decision affecting the same

victim restitution order to correct a clerical error, reflecting Greenway and defendant jointly and severally liable for the amount of $138,000 under section 2085.5. (*People v. Greenway*, *supra*, F087768.)

On April 26, 2024, at the sentencing hearing in this case, the trial court ordered defendant to pay restitution to T.B. in the amount of $138,000. There was no mention of joint and several liability with Greenway.

Defendant requests we direct the trial court to modify the victim restitution order to impose joint and several liability with Greenway. Although this request was not made in the trial court, the People do not object, and the appellate record is sufficient to make such an order.

Subdivision (f) of section 1202.4 provides in pertinent part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims . . . ." A joint and several direct victim restitution order under section 1202.4, subdivision (f) is not expressly permitted by statute, but is also not prohibited. (*People v. Arnold* (1994) 27 Cal.App.4th 1096, 1099.) The trial court therefore has discretion to make the obligation of multiple codefendants joint and several. (*People v. Neely* (2009) 176 Cal.App.4th 787, 800; *People v. Madrana* (1997) 55 Cal.App.4th 1044, 1049, 1051–1052.)

A restitution order is intended to compensate the victim for the actual loss he or she incurred; however, it is not intended to provide the victim with recovery greater than that amount. (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172; *People v. Fortune* (2005) 129 Cal.App.4th 790, 794–795.) When multiple defendants are culpable, the issue of double recovery is avoided when the trial court holds codefendants jointly

---

defendant or respondent in another such action"].) Our nonpublished opinion in *People v. Greenway* reflects the court's order imposing joint and several liability of the victim restitution order with Greenway. The nonpublished opinion is relevant to a material issue in this case.

and severally liable for the full amount of a crime victim's economic loss. (*People v. Leon* (2004) 124 Cal.App.4th 620, 622 ["a court may impose liability on each defendant to pay the full amount of the economic loss, as long as the victim does not obtain a double recovery"].)

An abstract of judgment may be modified to reflect that "the victim restitution order is a joint and several obligation." (*People v. Cornejo* (2016) 3 Cal.App.5th 36, 43; accord, *People v. Neely*, *supra*, 176 Cal.App.4th at pp. 800–801 [ordering modification of the judgment to expressly state that the restitution order is joint and several as to the defendant and the codefendant]; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1535 [to avoid double recovery, appellate court modified judgment "to provide expressly that the direct victim restitution ordered is joint and several"].)

In count 1, defendant was convicted of first degree residential burglary of T.B., who lost approximately $138,000 of items from the burglary. Greenway was also convicted of that same residential burglary. (*People v. Greenway*, *supra*, F087768.) Both Greenway and defendant were ordered to pay victim restitution. The trial court at Greenway's sentencing hearing ordered direct victim restitution in the amount of $138,000 paid by both defendants jointly and severally. (*People v. Greenway*, *supra*, F087768.) The court here, however, ordered only defendant to pay precisely the same amount in victim restitution. The court did not expressly address Greenway's liability. As the People concede, as a matter of equity, and because there is no double recovery, the matter should be remanded so that the court can modify the restitution order in the amount of $138,000 to make liability joint and several. (See, e.g., *People v. Blackburn*, *supra*, 72 Cal.App.4th at p. 1535; § 1202.46 [confers continuing jurisdiction to modify an order for victim restitution].)

## DISPOSITION

The matter is remanded with directions for the trial court to modify the judgment to provide that defendant and Greenway are jointly and severally liable for the direct

victim restitution on count 1 in the amount of $138,000. The court is also directed to correct the abstract of judgment accordingly and forward it and the victim restitution order to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

HARRELL, J.